**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF TEXAS

Case number *(if known)* _____  Chapter **11**

☐ Check if this an
  amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | | |
|---|---|---|---|
| 1. | **Debtor's name** | **OSG Holdings, Inc.** | |
| 2. | **All other names debtor used in the last 8 years** <br> Include any assumed names, trade names and *doing business as* names | | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **46-4252036** | |

4. **Debtor's address**

| **Principal place of business** | **Mailing address, if different from principal place of business** |
|---|---|
| **900 Kimberly Drive** <br> **Carol Stream, IL 60188** <br> Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| **DuPage** <br> County | **Location of principal assets, if different from principal place of business** |
| | Number, Street, City, State & ZIP Code |

5. **Debtor's website** (URL)   **https://everview.io/**

6. **Type of debtor**

   ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

   ☐ Partnership (excluding LLP)

   ☐ Other. Specify: _____

Debtor   **OSG Holdings, Inc.**                                    Case number (*if known*) _____
_____
          Name

**7.   Describe debtor's business**   A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes.

__5223__

**8.   Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check **all** that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

■ A plan is being filed with this petition.

■ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.   Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

☐ No.
■ Yes.

| | | | | |
|---|---|---|---|---|
| District | **District of Delaware** | When | **8/06/22** | Case number **22-10718-JTD** |
| District | _____ | When | _____ | Case number _____ |

Debtor    **OSG Holdings, Inc.**                                          Case number (*if known*) _____
_____
Name

**10. Are any bankruptcy cases**      ☐ No
**pending or being filed by a**      ■ Yes.
**business partner or an**
**affiliate of the debtor?**

List all cases. If more than 1,      Debtor    **SEE ATTACHED RIDER 1**            Relationship _____
attach a separate list                        _____

                                     District _____    When _____    Case number, if known _____

**11. Why is the case filed in**    Check all that apply:
**this district?**
                            ☐   Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately
                                preceding the date of this petition or for a longer part of such 180 days than in any other district.

                            ■   A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or**       ■ No
**have possession of any**       ☐ Yes.
**real property or personal**            Answer below for each property that needs immediate attention. Attach additional sheets if needed.
**property that needs**
**immediate attention?**             **Why does the property need immediate attention?** (*Check all that apply.*)

                            ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
                                What is the hazard? _____

                            ☐ It needs to be physically secured or protected from the weather.

                            ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example,
                                livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).
                            ☐ Other _____

                            **Where is the property?** _____

                                            Number, Street, City, State & ZIP Code

                            **Is the property insured?**

                            ☐ No
                            ☐ Yes.   Insurance agency _____

                                     Contact name _____

                                     Phone _____


███ **Statistical and administrative information**

**13. Debtor's estimation of**     .    Check one:
**available funds**
                            ■ Funds will be available for distribution to unsecured creditors.

                            ☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of**      ☐ 1-49                    ■ 1,000-5,000              ☐ 25,001-50,000
**creditors**              ☐ 50-99                   ☐ 5001-10,000             ☐ 50,001-100,000
                          ☐ 100-199                 ☐ 10,001-25,000           ☐ More than100,000
                          ☐ 200-999

**15. Estimated Assets**         ☐ $0 - $50,000            ☐ $1,000,001 - $10 million       ■ $500,000,001 - $1 billion
                          ☐ $50,001 - $100,000      ☐ $10,000,001 - $50  million     ☐ $1,000,000,001 - $10 billion
                          ☐ $100,001 - $500,000     ☐ $50,000,001 - $100 million     ☐ $10,000,000,001 - $50 billion
                          ☐ $500,001 - $1 million   ☐ $100,000,001 - $500 million    ☐ More than $50 billion

| Debtor | **OSG Holdings, Inc.** | Case number (*if known*) | |
| | Name | | |

**16.   Estimated liabilities**

- ☐ $0 - $50,000
- ☐ $50,001 - $100,000
- ☐ $100,001 - $500,000
- ☐ $500,001 - $1 million
- ☐ $1,000,001 - $10 million
- ☐ $10,000,001 - $50 million
- ☐ $50,000,001 - $100 million
- ☐ $100,000,001 - $500 million
- ■ $500,000,001 - $1 billion
- ☐ $1,000,000,001 - $10 billion
- ☐ $10,000,000,001 - $50 billion
- ☐ More than $50 billion

---

**Request for Relief, Declaration, and Signatures**

---

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **10/15/2023**
                      MM / DD / YYYY

**X** **/s/ Keith A. Maib**                                        **Keith A. Maib**
Signature of authorized representative of debtor        Printed name

Title   **Chief Restructuring Officer**

---

**18. Signature of attorney**

**X** **/s/ Marcus A. Helt**                                Date   **10/15/2023**
Signature of attorney for debtor                              MM / DD / YYYY

**Marcus A. Helt**
Printed name

**McDermott Will & Emery LLP**
Firm name

**845 Texas Avenue, Suite 4000**
**Houston, TX 77002**
Number, Street, City, State & ZIP Code

Contact phone   **(214)295-8000**        Email address   **mhelt@mwe.com**

**24052187 TX**
Bar number and State

---

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF TEXAS

Case number (if known) _____     Chapter __11__

## Rider 1

### Pending Bankruptcy Cases Filed by the Debtor and Certain Affiliates and Subsidiaries of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the Southern District of Texas for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases for procedural purposes only under the case number assigned to the chapter 11 case of OSG Holdings, Inc.

| Debtor Name | EIN Number |
|---|---|
| Applied Information Group, Inc. | 22-2887381 |
| Diamond Marketing Solutions Group, Inc. | 26-0573531 |
| DoublePositive Marketing Group, Inc. | 20-3508221 |
| E-statement.com Corp. | 00-3721974 |
| Globalex Corporation | 32-0095365 |
| JJT Enterprises, Inc. | 33-0947792 |
| Mansell Group Holding Company | 27-2289354 |
| Mansell Group, Inc. | 58-2597898 |
| Metrogroup PD-WI Acquisition, LLC | 20-4975979 |
| Microdynamics Corporation | 36-2820423 |
| Microdynamics Group Nebraska, Inc. | 26-0135711 |
| Microdynamics Transactional Mail, LLC | 36-4054060 |
| National Business Systems, Inc. | 41-1766946 |
| National Data Services of Chicago, Inc. | 36-3519009 |
| NCP Solutions, LLC | 26-2015620 |
| OSG Group Holdings, Inc. | 82-1620311 |
| OSG Group TopCo, LLC | 92-1040904 |
| OSG Holdings, Inc. | 46-4252036 |
| OSG Intermediate Holdings, Inc. | 82-1611288 |
| Output Services Group, Inc. | 22-3168044 |
| Payments Business Corporation | 11-2895590 |
| The Pisa Group, Inc. | 43-1506299 |
| PPS Business Corporation | 36-2896432 |
| SouthData, Inc. | 56-1475336 |
| Telereach, Inc. | 06-1324444 |
| The Garfield Group, Inc. | 22-3339966 |
| WhatCounts, Inc. | 91-2129306 |
| Words, Data and Images, LLC | 68-0522248 |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| OSG HOLDINGS, INC., | Case No. 23-[_____] ([____]) |
| Debtor. |  |

**CORPORATE OWNERSHIP STATEMENT**

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a governmental unit, that directly or indirectly own 10% or more of any of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| OSG Intermediate Holdings, Inc. | 100% |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| OSG HOLDINGS, INC., | Case No. 23-[_____] ([____]) |
| Debtor. | |

**LIST OF EQUITY SECURITY HOLDERS**[1]

| Equity Holder | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| OSG Intermediate Holdings, Inc. | 900 Kimberly Drive Carol Stream, IL 60188 | 100% |

---

[1]   This list serves as the disclosure required to be made by the above-captioned debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure.  All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

Fill in this information to identify the case:

Debtor name: OSG Holdings, Inc., et al.,

United States Bankruptcy Court for the: Southern District of Texas

Case number (If known):

☐ Check if this is an
amended filing

## Official Form 204

# Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 50 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 50 largest unsecured claims.*

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | **Wilmington Trust** PO Box 8955 Wilmington, Delaware 19899 | 866-829-1928 | Mezz Agent | | | | $70,818,705 |
| 2 | **Communisis Trustee (2011) Company Limited** Communisis House, Manston Lane Leeds, UK LS15 8AH | | UK Pension | Contingent and Unliquidated | | | $30,329,530 |
| 3 | **Pitney Bowes Presort Services Inc** Dept CH 14035 Palatine, Illinois 60055-4035 | 203-356-5000 pbsoftware.sales@pb.com | Trade Claim | | | | $8,000,000 |
| 4 | **Cenlar** 425 Phillips Blvd Ewing, New Jersey 08618 | 800-223-6527 | General Unsecured Claim | Contingent, Unliquidated, and Disputed | | | $3,903,805 |
| 5 | **UST Global Inc** PO Box 894427 Los Angeles, California 90189-4427 | 949-716-8757 | Trade Claim | | | | $2,964,882 |
| 6 | **Cenveo** PO Box 74007456 Chicago, Illinois 60674-7456 | 773-267-3600 | Trade Claim | | | | $1,164,214 |
| 7 | **Double Envelope Co.** PO Box 415000 Nashville, Tennessee 37241-7599 | 540-362-3311 inquire@double-envelope.com | Trade Claim | | | | $792,779 |
| 8 | **BlueCrest** PO Box 371896 Pittsburg, Pennsylvania 15250 | 877-406-7704 justin.odonnell@bluecrestinc.com | Trade Claim | | | | $791,576 |
| 9 | **Domtar** PO Box 281580 Atlanta, Georgia 30384-1580 | 803-802-7500 communications@domtar.com | Trade Claim | | | | $547,123 |
| 10 | **Amazon Web Services Inc** PO Box 84023 Seattle, Washington 98124-8423 | 206-508-4051 | Trade Claim | | | | $527,487 |

---

* On a consolidated basis. The information herein shall not constitute an admission of liability by, nor is it binding on, any Debtors with respect to all or any portion of the claims listed below. Moreover, nothing herein shall affect any Debtor's right to challenge the amount or characterization of any claim at a later date.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | If the claim is fully unsecured, fill in only unsecured claim amount. If the claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 11 | **Mac Papers**<br>PO Box 745747<br>Atlanta, Georgia 30374-5747 | 800-334-7026<br>mpec@macpapers.com | Trade Claim | | | | $508,608 |
| 12 | **CINC Systems**<br>1130 Hurricane Shoals Rd NE<br>Lawrenceville, Georgia 30043 | 678-205-1465<br>pat@cincsystems.com | Trade Claim | | | | $455,443 |
| 13 | **DMT Solutions**<br>PO Box 74007412<br>Chicago, Illinois 60674-7412 | 877-406-7704<br>justin.odonnell@bluecrestinc.com | Trade Claim | | | | $445,966 |
| 14 | **GuidePoint Security, LLC**<br>PO Box 844716<br>Boston, Massachusetts 02284-4716 | 877-889-0132 | Trade Claim | | | | $376,654 |
| 15 | **Flexible Staffing Services**<br>2955 Eagle Way<br>Chicago, Illinois 60678-2955 | 847-960-1200<br>info@fssstaff.com | Trade Claim | | | | $225,629 |
| 16 | **Black Knight Financial Services, Inc.**<br>601 Riverside Avenue<br>Jacksonville, Florida 32204 | 904-854-5100<br>AskBlackKnight@BKFS.com | Trade Claim | | | | $217,986 |
| 17 | **Open Text Inc**<br>C/O J.P. Morgan Lockbox<br>24685 Network Place<br>Chicago, Illinois 60673-1246 | 800-499-6544 | Trade Claim | | | | $199,142 |
| 18 | **Computer Design & Integration LLC**<br>PO Box 23246<br>New York, New York 10087-3246 | 877-216-0133 | Trade Claim | | | | $174,150 |
| 19 | **Tension Envelope**<br>PO Box 957385<br>St. Louis, Missouri 63195-7385 | 816-471-3800 | Trade Claim | | | | $170,861 |
| 20 | **Bell and Howell, LLC**<br>PO Box 743679<br>Atlanta, Georgia 30374-3679 | 800-961-7282 | Trade Claim | | | | $164,732 |
| 21 | **Randstad**<br>PO Box 2084<br>Carol Stream, Illinois 60132-2084 | 312-201-9690 | Trade Claim | | | | $161,490 |
| 22 | **GoLiveSMS**<br>2046 Treasurer Coast Plaze, Suite A 119<br>Vero Beach, Florida 32960 | 949-682-9691 | Trade Claim | | | | $141,215 |
| 23 | **Solarwinds**<br>PO Box 730720<br>Dallas, Texas 75373-0720 | 866-530-8040 | Trade Claim | | | | $137,528 |
| 24 | **Xcel Staffing Solutions, LLC**<br>1541 S Waukegan Road<br>Waukegan, Illinois 60085 | 847-261-2550<br>contact@thexcelgroup.com | Trade Claim | | | | $135,433 |

Debtor ____OSG Holdings, Inc., et al._____                                                          Case number (if known)_____

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 25 | **Insight Direct USA, Inc.** 6820 South Harl Avenue Temple, Arizona 85283-4318 | 800-467-4448 | Trade Claim | | | | $125,535 |
| 26 | **Foxpointe Solutions** 171 Sully's Trail Pittsford, New York 14534 | 844-726-8869 | Trade Claim | | | | $116,800 |
| 27 | **Stolze Printing Company, Inc.** 3435 Hollenburg Dr Bridgerton, MO 63044 | 314-209-1997 | Trade Claim | | | | $107,636 |
| 28 | **Genesis Technology Solutions** 856 RT 206, Building C, Suite 15 Hillsborough, NJ 08844 | 281-673-2800 | Trade Claim | | | | $91,001 |
| 29 | **CBTS Technology Solutions** 1507 Solutions Center Chicago, IL 60677 | 888-783-2506 | Trade Claim | | | | $90,183 |
| 30 | **Compuwerx** 10406 W 134th St Palos Pack, IL 60464 | 708-234-9510 | Trade Claim | | | | $90,173 |

**Omnibus Action by Written Consent in Lieu of a Meeting**
**of the Entities listed on Schedule A**

October 14, 2023

The undersigned, being (i) all of the members of the restructuring committees, boards of directors or boards of managers, or (ii) the sole member, as applicable (in each case, a "Governing Body" and collectively, the "Governing Bodies"), of all of the entities listed on Schedule A (each, a "Company" and together, the "Companies"), hereby consent, in accordance with the organizational documents of each Company and applicable state laws, to the following actions and adopt the following resolutions with respect to each Company in lieu of a meeting effective as of the date hereof.

## Chapter 11 Filing

WHEREAS, each Governing Body has considered presentations by the financial and legal advisors of each of the Companies regarding the liabilities and liquidity situation of each of the Companies, the strategic alternatives available to it, and the effect of the foregoing on each Company's business;

WHEREAS, each Governing Body has had the opportunity to consult with the financial and legal advisors of the Companies and fully consider each of the strategic alternatives available to the Companies;

WHEREAS, each Governing Body has had the opportunity to consult with the financial and legal advisors of the Companies and review the chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") preparation materials provided by the financial and legal advisors, and each Governing Body recommends the adoption of these resolutions;

WHEREAS, the Governing Body of OSG Group TopCo, LLC, a Delaware limited liability company ("TopCo"), previously established a Restructuring Committee (the "TopCo Restructuring Committee"), adopted an Amended and Restated Restructuring Committee Charter, and delegated to the TopCo Restructuring Committee certain duties, powers, and authority as described in such Amended and Restated Restructuring Committee Charter;

WHEREAS, the TopCo Restructuring Committee has recommended to the Governing Body of TopCo that the Governing Body of TopCo approve, adopt and ratify the Chapter 11 Filing resolutions set forth herein; and

WHEREAS, the Governing Bodies of each Company (other than TopCo, OSG Group Holdings, Inc. ("Group Holdings") and OSG Intermediate Holdings, Inc. ("Intermediate")) have previously, by separate Written Consent, approved and authorized (i) the solicitation of acceptances of a joint prepackaged plan of reorganization to be filed by such Companies under chapter 11 of the Bankruptcy Code (as may be amended or modified from time to time and including all exhibits and supplements thereto, the "Plan") contemplated by that certain Amended and Restated Restructuring Support Agreement by and among certain of the Companies and the other parties thereto (the "Restructuring Support Agreement"), (ii) the execution, delivery, performance and

1

entry into the Restructuring Support Agreement and commencement of solicitation of the Plan pursuant to sections 1125(g) and 1126(b) of the Bankruptcy Code and rule 3018(b) of the Federal Rules of Bankruptcy Procedure, and (iii) the Plan and all actions contemplated under the Plan.

NOW, THEREFORE, BE IT RESOLVED, that in the business judgment of each Governing Body, it is desirable and in the best interests of each Company (including a consideration of its creditors and other parties in interest) that each Company shall be, and hereby is, authorized to file, or cause to be filed, a voluntary petition for relief (each a "Chapter 11 Case" and collectively, the "Chapter 11 Cases") under the provisions of chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States;

FURTHER RESOLVED, that the Chief Executive Officer, any Vice President, any Assistant Vice President, any Chief Financial Officer, any Treasurer, any Chief Legal Officer, any Secretary or Assistant Secretary, any Manager, any Director, or any other duly appointed officer or other person acting at the direction of the foregoing officers of each Company (collectively, the "Authorized Signatories"), acting alone or with one or more other Authorized Signatories be, and they hereby are, authorized, empowered, and directed to execute and file on behalf of each Company all petitions, schedules, lists and other motions, papers, or documents, and to take any and all actions that they deem necessary, proper or convenient to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of each Company's business; and

FURTHER RESOLVED, that all acts and deeds previously performed by any of the Authorized Signatories or officers of any of the Companies prior to the adoption of the foregoing recitals and resolutions that are within the authority conferred by the foregoing recitals and resolutions, are hereby ratified, confirmed, and approved in all respects as the authorized acts and deeds of the Companies.

## Retention of Professionals

WHEREAS, each Governing Body has considered presentations by the financial and legal advisors of each Company regarding the retention of such financial and legal advisors by each Company.

NOW, THEREFORE, BE IT RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered and directed to employ the law firm of McDermott Will & Emery LLP ("McDermott") as general bankruptcy counsel to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of McDermott;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered and directed to employ the firm of Accordion Partners, LLC ("Accordion")

DocuSign Envelope ID: 04FBA5EA-9367-474E-AF9E-14E8996E1D92

as financial advisor to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each of each Company's rights and obligations; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of Accordion;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered and directed to employ the firm of Houlihan Lokey Capital, Inc. ("HK") as investment banker to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of HK;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered and directed to employ the firm of Kurtzman Carson Consultants LLC ("KCC") as notice and claims agent to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed appropriate applications for authority to retain the services of KCC;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ any other professionals to assist each Company in carrying out its duties under the Bankruptcy Code; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of any other professionals as necessary, proper or convenient; and

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, with the power of delegation, authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, and other professionals and to take and perform any and all further acts and deeds that each of the Authorized Signatories deem necessary, proper, or desirable in connection with each Company's Chapter 11 Case, with a view to the successful prosecution of such case.

## Debtor-in-Possession Financing, Cash Collateral, and Adequate Protection

WHEREAS, certain of the Companies are party to that certain (i) Amended and Restated First Lien Credit Agreement, dated as of August 31, 2022 (as may be amended, restated, amended and restated, modified or supplemented from time to time) (the "Existing First Lien Credit Agreement"), with the guarantors and lenders party thereto and Acquiom Agency Services LLC,

as the administrative agent (the "<u>Prepetition First Lien Agent</u>"); (ii) Credit Agreement, dated as of August 31, 2022 (as may be amended, restated, amended and restated, modified or supplemented from time to time) ("<u>Existing Mezz Credit Agreement</u>"), with the guarantors and lenders party thereto and Wilmington Trust, National Association, as the administrative agent (the "<u>Prepetition Mezz Agent</u>"); (iii) Forbearance Agreement and First Amendment to First Lien Credit Agreement, entered into as of June 7, 2023, with the lenders party thereto, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time; and (iv) Forbearance Agreement and First Amendment to Mezzanine Credit Agreement, dated as of June 7, 2023, with the lenders party thereto, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time; and

WHEREAS, reference is made to that certain Senior Secured Super-Priority Priming Term Loan Debtor-in-Possession Credit Agreement (together with any and all exhibits, schedules, and annexes thereto, the "<u>DIP Credit Agreement</u>") providing for a secured term loan financing facility of up to $50 million in the aggregate (together with all exhibits, schedules, and annexes thereto, as amended, amended and restated, supplement or otherwise modified from time to time, the "<u>DIP Facility</u>") dated as of, or about, the date hereof, that sets forth the terms and conditions of the debtor-in-possession credit financing to be provided to the Companies (other than TopCo, Group Holdings and Intermediate) by the lenders listed therein and party thereto from time to time (the "<u>DIP Lenders</u>") and the administrative agent(s) thereto (the "<u>DIP Agents</u>").

NOW, THEREFORE, BE IT RESOLVED, that in the judgment of the Governing Body of each Company (other than TopCo, Group Holdings and Intermediate), each such Company will receive benefits from the DIP Credit Agreement and the loans contemplated thereunder, and it is desirable and in the best interest of each Company, each such Company's equityholders, creditors, and other parties in interest that the form, terms, and provisions of (i) that certain DIP Credit Agreement and (ii) the Loan Documents (as defined in the DIP Credit Agreement) to which any and all of the Companies are a party, all other documents, agreements, instruments or certificates, intellectual property security agreements, joinders, and consents to be executed, delivered, or filed by each such Company in connection therewith, and the transactions contemplated by the DIP Credit Agreement and the other Loan Documents (as defined in the DIP Credit Agreement) (in each case including, without limitation, the borrowings and other extensions of credit thereunder, and the guaranties, liabilities, obligations, security interest granted and notes issued, if any, in connection therewith) be, and hereby are, authorized, adopted, and approved in substantially the form presented to the Governing Body of each Company (other than TopCo, Group Holdings and Intermediate), together with such changes as may be approved by the Authorized Signatories executing and delivering the same, such approval to be conclusively evidenced by such Authorized Signatory's execution and delivery thereof;

FURTHER RESOLVED, that the Governing Body of each Company (other than TopCo, Group Holdings and Intermediate) has determined that it is necessary and in the best interest of each such Company's business and affairs, each such Company's equityholders, creditors, and all other parties in interest that the form, terms, and provisions of (i) that certain DIP Credit Agreement, in substantially the form presented to the Governing Body of each Company (other than TopCo, Group Holdings and Intermediate) to execute, deliver, and perform the DIP Credit Agreement and (ii) the other Loan Documents (as defined in the DIP Credit Agreement) to which it is a party, to perform such Company's obligations thereunder and to consummate the transactions contemplated

thereby, including, without limitation, any borrowings, the performance of any guarantees and the granting of any security interests and liens, and each such Company's execution and delivery of, and the incurrence and performance of its obligations in connection with the DIP Credit Agreement, including without limitation, the guarantee of the Obligations (as defined in the DIP Credit Agreement) thereunder, and any other Loan Document (as defined in the DIP Credit Agreement) to which it is a party, and the consummation of the transactions contemplated thereby or entered into in connection with the Loan Documents (as defined in the DIP Credit Agreement), including, without limitation, any borrowing by any Company under the Loan Documents (as defined in the DIP Credit Agreement), are hereby, in all respects, authorized and approved;

FURTHER RESOLVED, that each Company (other than TopCo, Group Holdings and Intermediate) will obtain benefits from (a) the use of collateral, including cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), which is security for certain prepetition secured lenders (collectively, the "Prepetition Secured Lenders") under the Existing First Lien Credit Agreement and/or the Existing Mezz Credit Agreement, and (b) the incurrence of debtor-in-possession financing obligations pursuant to the DIP Facility (collectively, the "DIP Financing");

FURTHER RESOLVED, that in order to use and obtain the benefits of (a) the DIP Financing and (b) the Cash Collateral, and in accordance with section 363 of the Bankruptcy Code, each Company (other than TopCo, Group Holdings and Intermediate) will provide certain liens, claims, and adequate protection to the Prepetition Secured Lenders and to the DIP Lenders to secure the obligations of such Companies under the DIP Facility (the "DIP Obligations") as documented in a proposed order in interim and final form (the "DIP Orders"), authorizing and approving the DIP Credit Agreement, the other Loan Documents (as defined in the DIP Credit Agreement), and the transactions thereby, and submitted for approval to the Bankruptcy Court;

FURTHER RESOLVED, that the form, terms, and provisions of the DIP Orders to which each Company (other than TopCo, Group Holdings and Intermediate) is or will be subject, and the actions and transactions contemplated thereby are hereby authorized, adopted, and approved, and each of the Authorized Signatories of each such Company be, and hereby is, authorized and empowered, in the name of and on behalf of each such Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, each DIP Order and such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or documents relating to the transactions contemplated thereby to which each such Company is or will be a party, including, but not limited to, any security agreements, pledge agreements, guaranty agreement, assignment documents, notices, financing statements, mortgages, intellectual property filings, tax affidavits, fee letters and other instruments as any of the DIP Agents or requisite DIP Lenders may reasonably request or as may be necessary or appropriate to create, preserve and perfect the liens of the DIP Agents or the Prepetition First Lien Agent and/or the Prepetition Mezz Agent, purported or required pursuant to any of the transaction documents to be created in the Collateral (as defined in the DIP Credit Agreement (or similar term defined therein)), such agreements with third parties (including, without limitation, bank agency agreements, lockbox agreements, control agreements, landlord agreements and warehouse letters) relating to the Collateral (as defined in the DIP Credit Agreement (or similar term defined therein)), any swap contracts or hedging agreements and such other loan documents, guarantees, instruments, certificates and documents as may be reasonably requested by any of the DIP Agents, the requisite

5

DIP Lenders or required by the DIP Orders, DIP Credit Agreement or any of the foregoing (collectively with the DIP Orders, the "DIP Documents"), with such changes, additions, and modifications thereto as any Authorized Signatory executing the same shall approve, such approval to be conclusively evidenced by such Authorized Signatory's execution and delivery thereof;

FURTHER RESOLVED, that the incurrence of the liabilities and obligations arising from each DIP Order and each DIP Document by each Company party thereto, (i) is necessary and convenient to the conduct, promotion and attainment of the business of such Companies, and (ii) may reasonably be expected to benefit such Companies, directly or indirectly;

FURTHER RESOLVED, that each Company (other than TopCo, Group Holdings and Intermediate), as debtor and debtors-in-possession under the Bankruptcy Code be, and hereby is, authorized to incur the DIP Obligations, including the borrowing of the loans under the DIP Credit Agreement, and other obligations related to the DIP Financing and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Documents, including granting liens on and security interests in its assets, including the Collateral (as defined in the DIP Credit Agreement (or similar term defined therein)), to the DIP Agents or the Prepetition First Lien Agent and/or the Prepetition Mezz Agent to secure such obligations (collectively, the "DIP Transactions");

FURTHER RESOLVED, that each of the Authorized Signatories of each Company (other than TopCo, Group Holdings and Intermediate), acting alone or with one or more other Authorized Signatories, be, and hereby is, authorized, directed and empowered in the name of, and on behalf of, each such Company, as debtors and debtors-in-possession, to take such actions as in their discretion is determined to be necessary, desirable, or appropriate to execute the DIP Transactions, including the negotiation, execution and delivery of: (a) the DIP Documents; (b) such other instruments, certificates, notices, assignments, and other documents, including, without limitation, any amendments to any DIP Documents, as may be reasonably requested by the DIP Agents; and (c) such forms of deposit account control agreements, officer's certificates, and compliance certificates as may be required by the DIP Documents, in the name of and on behalf of each Company (other than TopCo, Group Holdings and Intermediate), with such changes therein as shall be approve by the Authorized Signatories executing the same, with such execution by said Authorized Signatory to constitute conclusive evidence of his or her approval of the terms thereof, including any departures therein from any form presented to the Governing Bodies of such Companies;

FURTHER RESOLVED, that each of the Authorized Signatories of each Company (other than TopCo, Group Holdings and Intermediate), acting alone or with one or more other Authorized Signatories, be, and hereby is, authorized, directed and empowered in the name of, and on behalf of, each such Company , as debtors and debtors-in-possession, to guarantee the DIP Obligations under the DIP Documents and to assign, transfer, pledge and grant to each DIP Agent or the Prepetition First Lien Agent and/or the Prepetition Mezz Agent, for the ratable benefit of the respective or applicable Secured Parties (as defined in the DIP Credit Agreement (or similar term defined therein)), a security interest in all or substantially all the assets of such Company, as collateral security for the prompt and complete payment and performance when due of the DIP Obligations under the DIP Credit Agreements, the DIP Orders, and the other DIP Documents to which such Company is a party or which it is subject to and to take or cause to be taken any such

actions as may be necessary, appropriate or desirable to cause the Companies (other than TopCo, Group Holdings and Intermediate) to create, perfect and maintain a security interest in such Companies' property or assets constituting Collateral (as defined in the DIP Credit Agreement (or similar term defined therein)) as described or contemplated in the DIP Documents;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized and empowered to take all actions or to not take any action in the name of each Company with respect to the transactions contemplated by these resolutions, whether existing now or in the future, in each case, as such Authorized Signatory shall deem necessary or desirable in such Authorized Signatory's reasonable business judgment, including without limitation, the authorization of resolutions and agreements necessary to authorize the execution, delivery and performance pursuant to the DIP Documents (including, without limitation, certificates, affidavits, financing statements, notices, reaffirmations and amendments and restatements thereof or relating thereto) as may be necessary, appropriate or convenient to effectuate the purposes of the transactions contemplated therein;

FURTHER RESOLVED, that each of the Authorized Signatories of each Company (other than TopCo, Group Holdings and Intermediate) be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, each Company (other than TopCo, Group Holdings and Intermediate) to file, or to authorize the DIP Agents to file, any Uniform Commercial Code (the "UCC") financing statements, any other equivalent filings, any intellectual property filings and recordation, and any necessary assignments for security or other documents in the name each Company (other than TopCo, Group Holdings and Intermediate) that the DIP Agents or the Prepetition First Lien Agent and/or the Prepetition Mezz Agent deem necessary or appropriate to perfect any lien or security interest granted under the DIP Orders and the DIP Documents, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired" and other similar descriptions of like import, and to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of each Company (other than TopCo, Group Holdings and Intermediate) and such other filings in respect of intellectual and other property of each such Company, in each case as the DIP Agents or the Prepetition First Lien Agent and/or the Prepetition Mezz Agent may reasonably request to perfect the security interests of the DIP Agents or the Prepetition First Lien Agent and/or the Prepetition Mezz Agent under the DIP Orders or any of the other DIP Documents;

FURTHER RESOLVED, that the pledge by the Companies (other than TopCo, Group Holdings and Intermediate) of the Pledged Equity (as defined in the DIP Credit Agreement or related security or pledge agreements (or similar term defined therein)) held by it, the transfer of such Pledged Equity (as defined in the DIP Credit Agreement or related security or pledge agreements (or similar term defined therein)) to the DIP Agents and any transfer from to time by the DIP Agents to any other person pursuant to the exercise of any rights under any collateral document and all steps required of any subsidiaries of the Companies (other than TopCo, Group Holdings and Intermediate) to give effect to such pledge and transfers, including the issuance of certificates of ownership and the entering of the names of any transferees onto such subsidiaries' equity holder registers, are hereby approved; and that each of the Authorized Signatories of each of the Companies (other than TopCo, Group Holdings and Intermediate) is hereby authorized, empowered and directed on behalf of such applicable Company, to execute and deliver any such other transfer documents or instruments;

FURTHER RESOLVED, that each of the Authorized Signatories of each Company be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, each Company (other than TopCo, Group Holdings and Intermediate) to take all such further actions, including, without limitation, to pay all fees and expenses payable in accordance with the terms of the DIP Documents, to arrange for and enter into supplemental agreements, amendments, instruments, certificates or documents relating to the transactions contemplated by any of the DIP Documents and to execute and deliver all such supplemental agreements, amendments, instruments, certificates or documents in the name and on behalf of each of the Companies (other than TopCo, Group Holdings and Intermediate), which shall in their sole judgment be necessary, proper or advisable in order to perform such Companies' obligations under of in connection with any of the DIP Documents and the transactions contemplated therein (execution by such Authorized Signatory to constitute conclusive evidence of such judgment), and to carry out fully the intent of the foregoing resolution. The performance of any such further act or thing and the execution of any such document or instrument by any of the Authorized Signatories of the Companies pursuant to these resolutions shall be conclusive evidence that the same have been authorized and approved by the Companies in every respect; and

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized to execute and deliver to the DIP Agents or the Prepetition First Lien Agent and/or the Prepetition Mezz Agent, as applicable, and to perform the applicable Company's obligations under, all other documents, certificates, instruments, agreements and writings including any interest rate swaps, caps, collars or similar hedging agreement and any financing statements (or amendments thereto) that may be contemplated by, or required in connection with, the DIP Documents, these resolutions and the transactions described herein and therein, and to do all such acts and things as any person hereinafter authorized to execute such documents on behalf of such Company determines to be necessary or advisable in connection with or as contemplated by, or for the purpose of giving effect to, or carrying out the provisions of, the DIP Documents, such determination to be conclusively evidenced by such person's signature thereon or completion thereof, as applicable.

## General Resolutions

NOW, THEREFORE, BE IT RESOLVED, that the Authorized Signatories of each of the Companies be, and each of them hereby is, authorized, empowered, and directed to execute, acknowledge, verify, deliver, and file any and all such other agreements, documents, instruments, and/or certificates and to take such other actions as may be necessary, proper or appropriate in order to carry out the intent and purposes of any of the foregoing resolutions;

FURTHER RESOLVED, that each Governing Body of each Company has received sufficient notices of the actions and transactions relating to the matters contemplated by any of the foregoing resolutions, as may be required by the organizational documents of each Company, or hereby waive any right to have received such notices;

FURTHER RESOLVED, that each of the members of the board of managers, board of directors, restructuring committees, the sole member, the manager or the managing member, as applicable, hereby irrevocably waives notice of the time, place, and purposes of a Meeting and any

adjournments thereof, to the extent such notice is required by the applicable organizational documents of each Company;

FURTHER RESOLVED, that any and all actions heretofore or hereafter taken and expenses incurred in the name of and on behalf of any Company by any officer, director or other Authorized Signatory of any Company in connection with or related to the matters set forth or contemplated by any of the foregoing resolutions be, and they hereby are, approved, ratified, and confirmed in all respects as fully as if such actions had been presented to the Governing Bodies for approval prior to such actions being taken; and

FURTHER RESOLVED, that any Authorized Signatory of any of the Companies is hereby authorized to certify to third parties with respect to adoption of any of the foregoing resolutions in the form and substance satisfactory to them.

*[Remainder of page intentionally left blank]*

The undersigned agree that this Omnibus Action by Written Consent in Lieu of a Meeting of the Governing Bodies shall be added to the corporate records of each Company and made a part thereof, and the undersigned further agree that the resolutions set forth hereinabove shall have the same force and effect as if adopted at a meeting duly noticed, held, called and constituted pursuant to each Company's organizational documents and the applicable laws of the jurisdiction in which such Company is organized. Facsimile, scanned, or electronic signatures shall be acceptable as originals.

*[Signature pages follow]*

**IN WITNESS WHEREOF**, the undersigned has executed this Omnibus Action by Written Consent as of the date first written above.

**BOARD OF DIRECTORS OF OSG GROUP HOLDINGS, INC.:**

_____
Timothy R. Pohl

**BOARD OF DIRECTORS OF OSG INTERMEDIATE HOLDINGS, INC.:**

_____
Dean Cherry

_____
Brett Shroll

**BOARD OF DIRECTORS OF OSG HOLDINGS, INC. AND SOLE MEMBER OF THE RESTRUCTURING COMMITTEE OF OSG HOLDINGS, INC.:**

_____
Dean Cherry

_____
Brett Shroll

_____
Timothy R. Pohl (as director and as sole member of the Restructuring Committee)

*[Signature Page to Omnibus Action by Written Consent*
*(Chapter 11 Filing, Retention of Professionals and DIP Facility)]*

**SOLE MEMBER OF THE RESTRUCTURING COMMITTEE AND BOARD OF DIRECTORS OF OUTPUT SERVICES GROUP, INC.:**

DocuSign by:

_____
8AC0993B4F4E4F3

Timothy R. Pohl

**BOARD OF DIRECTORS/MANAGERS OF TELEREACH, INC., THE PISA GROUP, INC., JJT ENTERPRISES, INC., DOUBLEPOSITIVE MARKETING GROUP, INC., NATIONAL BUSINESS SYSTEMS, INC., THE GARFIELD GROUP, INC., SOUTHDATA, INC., MANSELL GROUP HOLDING COMPANY, DIAMOND MARKETING SOLUTIONS GROUP, INC., APPLIED INFORMATION GROUP, INC., PAYMENTS BUSINESS CORP. (F/K/A PAYBOX CORP.), NATIONAL DATA SERVICES OF CHICAGO, INC., MANSELL GROUP, INC., GLOBALEX CORPORATION, WHATCOUNTS, INC., MICRODYNAMICS CORPORATION, PPS BUSINESS CORPORATION, E-STATEMENT.COM CORP., MICRODYNAMICS GROUP NEBRASKA, INC., AND METROGROUP PD-WI AND ACQUISITION, LLC:**

DocuSign by:

Dean Cherry
_____
2972DDC5B0B2449

Dean Cherry

DocuSign by:

Brett Shroll
_____
AF1D5FFF970BF46C

Brett Shroll

*[Signature Page to Omnibus Action by Written Consent*
*(Chapter 11 Filing, Retention of Professionals and DIP Facility)]*

**SOLE MEMBER OF WORDS, DATA AND IMAGES LLC:**

**OUTPUT SERVICES GROUP, INC.**

By: *Dean Cherry*
——————————————————
Name:  Dean Cherry
Title: President and CEO

**SOLE MEMBER OF NCP SOLUTIONS LLC:**

**PAYMENTS BUSINESS CORP.**

By: *Dean Cherry*
——————————————————
Name:  Dean Cherry
Title: President and CEO

**SOLE MEMBER OF MICRODYNAMICS TRANSACTIONAL MAIL, LLC:**

**MICRODYNAMICS GROUP NEBRASKA, INC.**

By: *Dean Cherry*
——————————————————
Name:  Dean Cherry
Title: President and CEO

*[Signature Page to Omnibus Action by Written Consent
(Chapter 11 Filing, Retention of Professionals and DIP Facility)]*

**MEMBERS OF THE RESTRUCTURING COMMITTEE OF OSG GROUP TOPCO, LLC:**

_____
Timothy R. Pohl

_____
Steven J. Pully

_____
William J. Ruckelshaus

**BOARD OF MANAGERS OF OSG GROUP TOPCO, LLC:**

_____
Dean Cherry


_____
Steven J. Pully


_____
William J. Ruckelshaus


_____
Lonnie Mahrt


_____
Amy O'Brien-Bird


_____
John Tarascio


_____
Nick Seibert


_____
Timothy R. Pohl

# SCHEDULE A

| Company |
| --- |
| OSG Group TopCo, LLC |
| OSG Group Holdings, Inc. |
| OSG Intermediate Holdings, Inc. |
| OSG Holdings, Inc. |
| Output Services Group Inc. |
| Telereach, Inc. |
| The Pisa Group, Inc. |
| JJT Enterprises, Inc. |
| DoublePositive Marketing Group, Inc. |
| National Business Systems, Inc. |
| The Garfield Group, Inc. |
| SouthData, Inc. |
| Words, Data and Images, LLC |
| Mansell Group Holding Company |
| Diamond Marketing Solutions Group, Inc. |
| Applied Information Group, Inc. |
| Payments Business Corp. (f/k/a Paybox Corp.) |
| NCP Solutions, LLC |
| National Data Services of Chicago, Inc. |
| Mansell Group, Inc. |
| Globalex Corporation |
| WhatCounts, Inc. |
| Microdynamics Corporation |
| PPS Business Corporation |
| E-Statement.com Corp. |
| Microdynamics Group Nebraska, Inc. |
| Microdynamics Transactional Mail, LLC |
| Metrogroup PD-WI Acquisition, LLC |

**Fill in this information to identify the case:**

Debtor name    **OSG Holdings, Inc.**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF TEXAS

Case number (if known) _____

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    **12/15**

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐   *Schedule H: Codebtors* (Official Form 206H)
☐   *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐   Amended *Schedule* _____
■   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
■   Other document that requires a declaration    **Corporate Ownership Statement; List of Equity Security Holders**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **10/15/2023**     X   ***/s/ Keith A. Maib***
                                      Signature of individual signing on behalf of debtor

                                       **Keith A. Maib**
                                       Printed name

                                       **Chief Restructuring Officer**
                                       Position or relationship to debtor